UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-62283-CIV-DIMITROULEAS

REGINALD CARNICK II and FRANK P. MIELE,

    Plaintiffs,

vs.

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON,
d/b/a Sea Wave Yacht Insurance,

    Defendants.
_____/

## OMNIBUS ORDER DENYING PLAINTIFFS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment (the "Motion for Summary Judgment" [DE 13], filed herein on May 28, 2013, and Plaintiffs' Motion to Strike the Declaration of David Wills (the "Motion to Strike") [DE 21], filed herein on June 14, 2013. The Court has carefully considered the Motions [DE 13, 21], Responses [DE 19, 23], Replies [DE 22, 25], and the evidence submitted in the record. The Court is otherwise fully advised in the premises.

### I.    BACKGROUND

The parties have provided in their respective Statements of Material Facts [DE 13-1, 19-1] various factual assertions that are supported by the record. In some instances, the parties have not contested their adversaries' assertions. In other instances, the parties have contested their adversaries' assertions but without citing sufficient materials in the record to refute those assertions. The Court will deem all of these uncontested—or insufficiently contested—factual

1

assertions to be admitted.  *See* S.D. Fla. L.R. 56.1(b); Fed. R. Civ. P. 56(c),(e).  The Court will now set forth the relevant admitted facts.

The parties to this action are Plaintiffs Reginald Carnick II ("Carnick") and Frank P. Miele ("Miele" and together with Carnick, "Plaintiffs") and Defendants Certain Underwriters at Lloyd's of London d/b/a Sea Wave Yacht Insurance ("Defendants").  Plaintiffs are residents of Broward County, Florida.  [DE 1-2 at 6].  Defendants act as an insurer authorized to do business in the State of Florida.  [*Id.*; DE 1-3 ¶ 3].

Plaintiffs are joint owners of a 32-foot Luhrs motorized vessel (the "Vessel").  [DE 13-1 ¶ 1; DE 19-1 at 1].[1]  At all material times, Plaintiffs insured the Vessel with Defendants.  [DE 13-1 ¶ 2; DE 19-1 at 1].

On or about June 18, 2011, the Vessel took on water while at its dock and sank.  [DE 1-2 at 7; DE 1-3 ¶ 10; DE 13-1 ¶ 3; DE 19-1 at 1].  On or about June 19, 2011, Plaintiffs filed an insurance claim for the sinking of the Vessel.  [DE 1-2 at 7-8; DE 1-3 ¶ 12; DE 13-1 ¶ 4; DE 19-1 at 1].  On June 20 and June 21, 2011, Stewart Hutcheson ("Hutcheson") surveyed or inspected the Vessel on Defendant's behalf.[2]  [DE 13-1 ¶ 5; DE 19-1 at 1, 2; DE 17-1 at 55:12-15; DE 15-1 at 35:22-37:17].  Based on the survey, Hutcheson determined that a failed raw-water hose on the air conditioning unit caused the ingress of water on the Vessel.  [DE 1-2 at 7; DE 1-3 ¶ 10; DE 13-1 ¶ 6; DE 19-1 at 3; DE 17-1 at 97:2-98:11, 100:3-6, 160:22-25, 173:22-174:2].

Defendant denied coverage for losses under the insurance policy (the "Policy"), stating in the denial letter that "it was determined the vessel sank due to a deteriorated thru hull fitting and

---

[1] The Court notes Plaintiffs failed to file their Statement of Material Facts [DE 19-1] in accordance with Local Rule 56.1.  That Rule provides that "[s]tatements of material facts submitted in opposition to a motion for summary judgment shall correspond with the order and with the paragraph numbering scheme used by the movant, but need not repeat the text of the movant's paragraphs."  S.D. Fla. L.R. 56.1(a).

[2] Plaintiffs dispute that Hutcheson "surveyed" the vessel because "'[s]urvey' is not a reliably defined term of art." [DE 19-1 at 1, 2].  Plaintiffs, however, do not provide evidence refuting the fact that Hutcheson inspected the Vessel.

2

an inoperable bilge pump." [DE 1-2 at 8; DE 1-3 ¶ 14]. Defendant relied on the following exclusion ("Exclusion C") contained in the Policy:

> The insurance does not cover losses and or damages arising (whether incurred directly or indirectly) from the following:
>
> C. The cost of replacing any part of Your Boat by reason of wear and tear, gradual deterioration, osmosis, wet or dry rot, corrosion, weathering, marring, scratching, denting, vermin, pets, or marine life, or electrolytic or galvanic action.

[DE 13-1 ¶ 8; DE 19-1 at 6; DE 1-2 at 23].

On September 22, 2012, Plaintiffs filed their Complaint [DE 1-2] in state court, bringing one count for a declaratory judgment that Defendants' investigation process was faulty as a matter of law and one count for breach of contract for Defendants' failure to pay Plaintiffs pursuant to the Policy. *See* [1-2 at 36-37]. On November 11, 2012, Defendants removed the case to this Court based on diversity jurisdiction. *See* [DE 1]. On May 28, 2013, Defendants filed the Motion for Summary Judgment [DE 13]. On June 14, 2013, Plaintiffs filed the Motion to Strike [DE 21], seeking to strike the declaration of Defendants' expert witness, David Wills ("Wills").

## II.    STANDARD OF REVIEW

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not

3

'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

### III.   DISCUSSION

**A.   Motion to Strike**

Relying on Rule 37(c)(1) of the Federal Rules of Civil Procedure (the "Rules"), Plaintiffs request that the Court strike Paragraph 9 from the declaration of David Wills (the "Wills Declaration") [DE 18-1]. Rule 37(c)(1) provides as follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).

In Paragraph 9, Wills testifies that "[i]t is my opinion, based upon testing performed by me, that the fracture of the subject air conditioning hose occurred over a period of time and not as a result of a traumatic event." [DE 18-1 ¶ 9]. Plaintiffs argue that this opinion relies on

4

information that was not properly disclosed under Rule 26(a)(2)(B)[3] through Wills's previous expert report (the "Wills Report") [DE 21-1]. Specifically, Plaintiffs claim that the Wills Report did not make "any statement similar to that in paragraph 9 of the [Wills Declaration], nor any that could indicate that Mr. Wills undertake to determine any matter relevant to [Exclusion C] in the subject [Policy]." *See* [DE 21 at 2]. Moreover, Plaintiffs submit that it would be irremediably prejudicial for the Court to allow the previously undisclosed content of Paragraph 9 into the record at this late juncture, when the discovery period has ended.

After examining the Wills Declaration and the Wills Report, the Court finds no merit in the Motion to Strike [DE 21]. First, Defendants timely disclosed the Wills Report on April 1, 2013, within the deadline set in the Court's Scheduling Order [DE 4]. Second, there is no disparity between the Wills Report and Paragraph 9 of the Wills Declaration. The Wills Report includes the following findings:

> The inspections and testing conducted by Exponent revealed a stepped, jagged profile where the fracture surface and the hose exterior intersect. This pattern is present as a result of numerous small parallel surface cracks in the hose cover joining together over some period of time to form a lengthy fracture front . . . . Exponent did not determine the age of the hose. The surface cracks depicted in attached photographs suggest the hose has been in service for a significant time and has reached the end of its service life.

---

[3] Rule 26(a)(2)(B) requires expert reports to include the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).   **Error! Main Document Only.**

5

*See* [DE 21-1 at 12-13]. This statement is materially similar to the statement in the Wills Declaration that "the fracture of the subject air conditioning hose occurred over a period of time." *See* [DE 18-1 ¶ 9]. Third, the Wills Report provides information regarding the type of testing used to reach these findings. *See* [DE 21-1 at 11-12]. Finally, prior to receiving the Wills Report, Plaintiffs were on notice regarding the applicability of Exclusion C and the issues of forensic testing and/or wear and tear. *See* [DE 1-2 at 36-37; DE 1-3 ¶¶ 41, 43].

Thus, the Wills Report complied with Rule 26(a). Furthermore, after receiving the Wills Report on April 1, 2013, Plaintiffs had one month to conduct any discovery as to any relevant issues raised therein. *See* [DE 5]. Plaintiffs now have no grounds to complain of surprise or prejudice based on the Wills Report or the subsequent Wills Declaration. Consequently, Plaintiffs' Motion to Strike [21] is denied.

**B.      Motion for Summary Judgment**

First, the Court will consider whether there is a genuine dispute as to the cause of the loss of the Vessel. Next, the Court will determine whether the Policy requires Defendants to provide coverage based on that loss. Finally, the Court will address Plaintiffs' claims regarding Defendants' investigative process.

1.      Cause of the Loss

The parties agree that the cause of the loss was a fractured raw-water intake hose that was part of the air conditioning unit of the Vessel. *See* [DE 13-1 ¶ 6; DE 19-1 at 3-4]. The parties, however, dispute the cause of the fracture of that hose.

Defendants assert that the fracture of the hose occurred over a period of time and was not the result of a traumatic event. *See* [DE 13-1 ¶ 7]. Plaintiffs attempt to refute this assertion by

relying on their Motion to Strike [DE 21].  *See* [DE 19-1 at 4-6].  They argue that Defendants' position on the cause of the hose fracture is based solely on the Wills Declaration, which should be stricken.  Plaintiffs' additionally assert that, at all times before the sinking, they maintained the Vessel in excellent condition, mechanically and aesthetically.  *See* [DE 19-1 at 7].  In support, Plaintiffs provide two affidavits, both including testimony that Plaintiffs have maintained the Vessel in "excellent condition."  *See* [20-1 ¶ 4; 20-2 ¶ 5].

The Court finds that there is no *genuine* dispute as to the cause of the hose fracture.  As stated above, the Wills Declaration is properly in the record and will not be stricken.  Through that declaration, Defendants' expert testifies that the hose "had been in service for a significant period of time and had reached the end of its service life" and "that the fracture of the . . . hose occurred over a period of time and not as a result of a traumatic event."  [DE 18-1 ¶¶ 8-9].

Plaintiffs have neither deposed Wills regarding his conclusions nor provided alternative expert testimony regarding the cause of the hose fracture.  Rather, Plaintiffs have provided two affidavits that make no mention of the fractured hose.  *See* [DE 20-1; 20-2].  This evidence is not significantly probative on the discrete issue of the cause for the hose's fracture.  Accordingly, there is no genuine dispute as to whether the hose fracture occurred over a period of time, rather than as the result of a sudden event.  *See Roberts v. State Farm Fire and Cas. Co.*, 479 F. App'x 223, 226 (11th Cir. 2012) ("[T]he non-moving party cannot create a genuine issue of material fact through . . . evidence that is merely colorable or not significantly probative." (internal quotations omitted)).

2.       Whether the Loss is Excluded Under the Policy

As stated above, the record confirms that the hose fracture occurred over a period of time and that the fracture caused the Vessel to sink. The remaining issue is whether the Policy—specifically, Exclusion C—excludes coverage under those circumstances.

Under Florida law,[4] insurance contract interpretation is a matter of law to be decided by the court. *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985) (citing *Smith v. State Farm Mut. Auto. Ins. Co.*, 231 So. 2d 193, 194 (Fla. 1970)). "Insurance contracts must be construed according to the plain language of the policy." *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). If the policy language is susceptible to two reasonable interpretations, the policy is ambiguous. *Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005). Where there is an ambiguity in the contract language, the ambiguity must be construed liberally in favor of the insured and strictly against the insurer, who generally drafted the contract language. *Swire Pac. Holdings, Inc.*, 845 So. 2d at 165.

However, "[t]he lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts." *Id.* at 166 (internal quotations omitted). Moreover, "[a]n insurance policy, though it may be complex, is not ambiguous merely because it requires analysis to interpret it." *Gen. Star Indem. v. W. Fla. Vill. Inn, Inc.*, 874 So. 2d 26, 31 (Fla. 2d DCA 2004). "[T]erms of an insurance policy should be taken and understood in their ordinary sense, and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties—not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) (internal citation omitted).

---

[4] The parties do not dispute that Florida law governs the Policy.

Plaintiffs argue that their claim does not fall within Exclusion C[5] of the Policy. Plaintiffs interpret Exclusion C as applying only to costs and repairs of "any part" of the boat and not to costs and repairs for the "entire boat." *See* [DE 19 at 11]. Plaintiffs provide two arguments in support of this interpretation.[6]

First, Plaintiffs note that the majority of the remaining exclusions refer to "Your Boat," as opposed to the reference to "any part of Your Boat" included in Exclusions C and D. *See* [DE 1-2 at 23]. Therefore, Exclusions C and D are specifically limited in scope to discrete parts of the Vessel, whereas the remaining exclusions apply to the entire Vessel.

Second, Plaintiffs contend that the occurrences enumerated in Exclusion C—osmosis, wet rot, dry rot, corrosion, weathering, marring, scratching, denting, vermin, pets, marine life, electrolytic action, galvanic action—inform the meaning of the entire exclusion. Specifically, those occurrences will most likely affect a part of the vessel without sinking it; therefore, it follows that Exclusion C excludes coverage for damages/repairs to "parts" of the Vessel rather than to the entire Vessel.

The Court finds that the language of Exclusion C is unambiguous and excludes coverage for Plaintiffs' insurance claim. The fracture of the subject hose occurred over a period of time,

---

[5] Exclusion C provides as follows:

> The insurance does not cover losses and or damages arising (whether incurred directly or indirectly) from the following:
>
> C. The cost of replacing any part of Your Boat by reason of wear and tear, gradual deterioration, osmosis, wet or dry rot, corrosion, weathering, marring, scratching, denting, vermin, pets, or marine life, or electrolytic or galvanic action.

[DE 13-1 ¶ 8; DE 19-1 at 6; DE 1-2 at 23].

[6] Plaintiffs rely on two canons of construction: (1) *expressio unius est exclusion alterius*, which provides that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded; and (2) *noscitur a sociis*, which provides that general and specific words capable of analogous meaning when associated together take color from each other so that the general words are restricted to a sense analogous to the specific words. *See* [DE 19 at 11-12] (internal quotations and citations omitted).

rather than as a result of a single traumatic event. That fracture, therefore, falls within the plain meaning of either "wear and tear" or "gradual deterioration," such that the Policy does not cover losses or damages arising from replacing any part of the Vessel because of that fractured hose.

Moreover, Plaintiffs' interpretation of Exclusion C is strained and/or unrealistic. Imagine that the Vessel was comprised of one hundred (100) discrete "parts" and that gradual deterioration destroyed all but one of those "parts." Under Plaintiffs' construction, the exclusion would apply—and Plaintiffs would not be entitled to any remuneration—because the claim would be for the cost of replacing "any part[s]" of the Vessel rather than the entire Vessel. However, if that single remaining part were destroyed, the exclusion would no longer apply, and Defendants would have to replace the entire Vessel. That construction is unrealistic.

The Vessel is nothing but a sum of its parts. Exclusion C excludes coverage for any single part or collection of parts if the damage thereto was caused by osmosis, wet rot, dry rot, corrosion, weathering, marring, scratching, denting, vermin, pets, marine life, electrolytic action, or galvanic action. It is irrelevant whether 5%, 75%, or 100% of the total number of parts were damaged.

Finally, there is no support for Plaintiffs' contention that these occurrences would not sink—or otherwise destroy—a boat. For example, the hull could suffer from severe rot or corrosion, causing a breach which ultimately allows the boat to sink. Accordingly, the listing of these specific occurrences does not support Plaintiffs' interpretation that Exclusion C is limited to damage to parts of, rather than the whole of, the Vessel.

Thus, Defendants, pursuant to Exclusion C, properly denied coverage for Plaintiffs' insurance claim. Accordingly, there are no genuine disputes of material fact, and Defendants are entitled to judgment as a matter of law on Plaintiffs' claim for breach of the Policy.

### 3. Defendants' Investigation Process

Based on the foregoing, the Court finds that any issue with respect to Defendants' investigation process—and/or Plaintiffs' declaratory judgment claim—are moot. The Florida statutes on which Plaintiffs rely, Fla. Stat. §§ 626.9541 and 624.155, do not provide for any cause of action or liability where a plaintiff has not established a right to recover under the applicable insurance contract. *See Progressive Am. Ins. Co. v. Rural/Metro Corp. of Fla.*, 994 So. 2d 1202, 1208 (Fla. 5th DCA 2008) ("Under Florida law, a party cannot pursue a cause of action for unfair settlement practices until the party has determined that it is entitled to recover under the insurance contract at issue."); *Hunt v. State Farm Fla. Ins. Co.*, 112 So. 3d 547, 549 (Fla. 2d DCA 2013) ("'[B]ringing a cause of action in court for violation of section 624.155(1)(b)(1) is premature until there is a determination of liability and extent of damages owed on the first-party insurance contract.'" (quoting *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000))). Moreover, Plaintiffs' breach of contract claim effectively subsumes any issues posed by their declaratory judgment claim. *See, e.g.*, *Eisenberg v. Standard Ins. Co.*, No. 09-80199, 2009 WL 3667086 at *2 - *3 (S.D. Fla. Oct. 26, 2009) ("A petition seeking declaratory judgment that alleges breach of duties and obligations under the terms of a contract and asks the court to declare those terms breached is nothing more than a petition claiming breach of contract. It thus provides an adequate remedy at law, and a decision on the merits of the breach of contract claim would render the defendant's request for declaratory judgment moot or redundant.").

Thus, all remaining issues are resolved by the Court's determination that Plaintiffs are not entitled to recover under the Policy.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion to Strike [DE 21] is **DENIED**;

2. Defendants' Motion for Summary Judgment [DE 13] is **GRANTED**;

3. Pursuant to Federal Rule of Civil Procedure 58(a), the Court will enter final judgment by separate order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 13th day of August, 2013.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:

Counsel of record